Matthew G. Monforton (Montana Bar # 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Phone: (406) 570-2949
Email: matthewmonforton@yahoo.com

Adam E. Schulman (DC Bar No. 1001606*)
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street, NW Suite 300
Washington, DC 20006
Phone: (610) 457-0856
Email: adam.schulman@hlli.org

*Appearing Pro Hac Vice*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| ACCOUNTABILITY IN STATE GOVERNMENT, a Montana independent political committee; DAN BARTEL<br><br>Plaintiffs,<br><br>v.<br><br>AUSTIN KNUDSEN, in his official capacity as Montana Attorney General; KEVIN DOWNS, in his official capacity as Lewis and Clark County Attorney; CHRIS GALLUS, in his official capacity as Montana Commissioner of Political Practices,<br><br>Defendants. | Case No. 26-CV-00038-H-SPW<br><br><br>**Plaintiff Dan Bartel's Declaration ISO Motion for Preliminary Injunction** |

i

I, Dan Bartel, declare as follows:

1.      I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.      I am a Plaintiff in this litigation, along with the Montana-based Accountability in State Government (ASG), a political committee duly registered with the Montana Commissioner of Political Practices. ASG is headquartered in Lewistown, Montana, and was created on October 9, 2025. Its mission is to promote honesty, openness, and responsibility in state government by providing Montanans with fact-based evaluations of legislative conduct and by holding elected officials accountable.

3.      I am the registered treasurer of ASG and I reside in Fergus County, Montana. I am also the founder of ASG. As treasurer, I am responsible for managing ASG's finances to include its campaign finance compliance.

4.      I bring this suit because, as a result of my work at ASG, both ASG and I face direct exposure to penalties and sanctions authorized by the Digital Censorship Act. *See* Mont. Code Ann. § 13-35-801, et seq.

5.      To advance its mission, ASG produces and disseminates election communications, including materials that incorporate digitally-created or digitally-edited content with some use of AI technology, to inform Montana voters about the legislative records of their elected representatives. ASG often uses AI to modify authentic photographs of legislators in order to depict and symbolize positions they took on various legislation with dramatized words and images.

6.     For example, ASG—through the contractor Resolve Campaigns, LLC—sponsored and created a one-page mailer regarding former-Representative Jennifer Carlson, who was running for a different Montana House seat, for her 2023 vote in favor of HB 9 (2023). HB 9 was an appropriations bill directing state funding to organizations that promoted a number of ideologically-driven programs and organizations including a DEI film festival, a theatrical production entitled "Diversity Day," transgender art projects, and nude art displays. On April 10, 2026, ASG disseminated 1,872 campaign mailers to households in Montana House District 68, a district that includes Belgrade, Churchill, and Amsterdam where Carlson was running. The front and back of the mailer used authentic photographs of Carlson as the base image, but added AI-derived content such as a "pride" flag to Representative Carlson's hand and a preferred pronoun button with the words "SHE/HER" to her sweater. It also included digitally rendered images of clouds for its background.

7.     On the same day or shortly thereafter, ASG distributed a similar mailer to households in Montana House District 28 concerning Representative Eric Albus, who also voted for HB 9 (2023). It also used authentic photographs of Representative Albus as a base, and digitally created images of a "pride" flag in his hand along with a preferred pronouns button on his jacket.

8.     Finally, ASG paid for and disseminated mailers to households in Montana Senate District 9 concerning Representative Llew Jones, who was seeking the Republican nomination for that district. The mailers highlighted Jones's past votes for controversial bills such as HB 473 (2017), which sought to

3

raise gas taxes. It included authentic images of Jones as a base, and an AI-generated image of a gas pump placed in his left hand pouring out ten-dollar bills, along with the price of gas being an "ARM" and a "LEG."

9.     Both ASG and I believe in the use of AI to help deliver political messages in our materials through the use of symbolism, shock, dramatic effect, humor, absurdity, irony, illustration, or other means. The intent of the aforementioned mailers was not to deceive listeners into thinking the subject candidates had trotted out pronoun pins and pride flags and posed for photos (in Carlson's and Albus's case), or that gas literally costs an arm and a leg thanks to Jones. Rather, the intent is to comment on and criticize their voting records, which neither I nor ASG believes effectively serves the people of Montana or these Representatives' constituents.

10.     From my experience in the organization, ASG finds these mailers to be an effective and engaging means of informing Montana residents about the poor legislative activities of their state representatives. This type of speech is integral to the organization's core political rights and, absent the threat of legal penalty from the Digital Censorship Act, ASG intends to continue producing such materials and disseminating them in future elections.

11.     As the organization's founder and treasurer, I endorse the use of AI-generated mailers and messaging for our political and information campaigns. Absent the threat of legal penalty from the Digital Censorship Act, I intend to continue spending ASG's funds on this medium and message style because I find

4

it effectively advances the organization's core mission. I also intend to continue my work at ASG.

12.    Both I and ASG received a letter from Chris Gallus, the Montana Commissioner of Political Practices (COPP), shortly after April 29, 2026. The letter informed us that Carlson filed an administrative complaint against us for the mailer about her with his agency, alleging that our mailers violated the Digital Censorship Act.

13.    The Digital Censorship Act levies possible civil and criminal penalties against both myself and ASG for our manufacturing and dissemination of this style of mailer. As written in Gallus's letter, his agency will investigate and if it believes a violation occurred, prosecution may be referred to my local prosecutor or carried out by the agency itself. His letter also warned "due to the severity of the penalty, I feel compelled to provide you with the relevant statute in this regard," and then he attached Mont. Code Ann. § 45-7-207, Montana's criminal statute prohibiting tampering with or fabricating physical evidence.

14.    The Digital Censorship Act, and the scope of its prohibition, is vague and unclear to me in several respects. I do not know what the law means by prohibiting AI-generated content that "provides a reasonable person a fundamentally different understanding or impression" than would the unaltered media. I do not know what the law means by allowing "minimally edited" content "that does not materially alter the meaning or significance that a reasonable person understands." I do not believe that the law provides, or even can provide, an objective definition of speech that falls within its satire/parody

carve out. It is not clear what the Act means by defining "Deepfake" by the creator's "intent to injury the reputation of the candidate or party or otherwise deceive a voter." It is not clear what the Act means by extending its scope to those "working in an official election capacity."

15.     My understanding is the Digital Censorship Act contains a carve out that would allow both ASG and I to avoid liability under the law by including a disclosure that says "This _____ (image/audio/video/multimedia) has been significantly edited by artificial intelligence and depicts speech or conduct that falsely appears to be authentic or truthful." § 13-35-802(1)(b). This disclosure comes with rigid size, font, and duration requirements. I do not want to include the disclosure in ASG's mailers for three unique reasons. First, the mailers are core political speech protected by the First Amendment and, as a believer in the Constitution, I do not want to include a state-mandated message alongside these mailers. Second, the disclosure negatively affects *our* message, diluting and diminishing the force of the message we seek to convey. It would distract the reader from the central criticism of the candidates' voting records, and instead put their attention on the fact that the image was AI-altered. Moreover, it would give the affirmatively false impression that the accurate information about the candidates' voting records is not "authentic or truthful." Third, the size, font, and duration requirements means the organization would have to waste space on a disclaimer we don't want and either spend more money on larger mailers or a redesign of the mailers.

16. Shortly after May 5, we received notice from Gallus that Representative Albus filed a complaint with the COPP against us for the mailers about him, alleging a violation of the Digital Censorship Act. We received a similar demand to respond to the administrative complaint and notice that we were under investigation.

17. About the same time, we also received separate notice from Gallus that Ross Fitzgerald, a political opponent of mine and an ally of Llew Jones, filed a complaint for our Jones mailers, alleging a violation of the Digital Censorship Act. We received similar instructions to respond and notice that we were under investigation for this activity, too.

18. I would like ASG to continue its employment of AI-generated mailers for the upcoming November 3, 2026, general election to raise awareness about legislators and their voting records. To be specific, attached as Exhibit 1 to this declaration is a mock up of one such mailer, employing AI-generated content, that we would like to distribute during the November general election cycle. We intend to send this mailer out to households the week of October 1, to coincide with the dissemination of absentee ballots. We will not distribute this mailer, however, without first obtaining judicial relief in order to ensure that we do not expose ourselves to additional liability under the Digital Censorship Act

19. Because of the threat of the law, as manifested through the three COPP complaints against both ASG and me for the prior mailers, we are chilled from exercising the same creative liberty and engaging in the same political

speech for fear of facing further complaints, investigations, and potential penalties and sanctions from the Digital Censorship Act.

20. Even if the Defendants were to attempt to eventually assure us that our previous mailers were permitted under the Act, given the open-ended language of the law and the weaponization of the law that has already occurred (including the burdensome process of responding to COPP complaints), we would not still not feel comfortable speaking freely in the future, without an legal declaration and injunction.

21. I am also harmed by the Digital Censorship Act because I wish to see and consume other political AI-generated content of other creators that the Act prevents me from receiving.

22. Both ASG and I are irreparably harmed by the existence and enforcement of the Digital Censorship Act. The active COPP complaints us and the potential for sanctions and penalties in retaliation for protected First Amendment activity are, by themselves, irreparable harm. Further, these investigations and the threat of future investigations have led us to recalibrate what we say for future mailers in Montana. Thus, our speech has been chilled and we don't feel free to speak on politics as we otherwise would in the upcoming general election fast approaching that we intend to participate in. The Act's existence and threat of enforcement deprives us both of First Amendment rights, and the loss of constitutional rights is irreparable harm.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dan Bartel

Executed on July 16, 2026 in Lewistown Montana